**In re GRAND JURY PROCEEDINGS.**

**M11–188(RO).**

United States District Court,
S. D. New York.

Jan. 8, 1981.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City by Scott G. Campbell, Asst. U. S. Atty., New York City, for petitioner.

Kasanof, Schwartz, Iason, New York City by Lawrence Iason, Andrew M. Lawler, New York City, for respondents.

OPINION AND ORDER

OWEN, District Judge.

A Grand Jury Subpoena Duces Tecum has been served upon one "John Doe," the executive Vice President of the "ABC" Corporation.* This subpoena, addressed to "JOHN DOE, VICE–PRESIDENT As Custodian of the Records of ABC Corporation", calls for the production of "All business diaries, telephone logs and rolodexes maintained by or for JOHN DOE for the calendar years 1974 through the present in your

---

* These pseudonyms are used throughout this opinion.

care, custody, possession or control, or in the care, custody, possession and control of any of your agents."

ABC Corporation, taking the position that any rolodexes or telephone logs which met the description in the subpoena are corporate records, has itself provided those materials to the grand jury. The only other documents sought by the subpoena are diaries. Doe relying on his constitutional privilege not to be a witness against himself, has refused to produce any diaries and has refused to state whether he even has such diaries.[**]

The Government moves to compel production of any diaries and contends that upon such a motion the burden is on the witness to demonstrate to the court that if a diary exists, it is personal and therefore one as to which he may assert the privilege.

Doe on the contrary, contends that the prosecutor has the burden of going forward to show both that a diary exists and that it is a corporate, not a personal document, and therefore must be produced.

 Without question, a corporate officer, served with the subpoena at issue here, is required to produce a corporate or business diary in his possession. He is also required to produce a personal diary if he does not contend that its contents would incriminate him. On the other hand, if a corporate officer properly concludes that his diary is personal as the law defines it, and that as to it he may validly assert the privilege against self-incrimination, then as I see it, he has no obligation to respond to the subpoena other than by the statement that he has no corporate diaries and beyond that he may assert the privilege. This necessarily flows from the fact that the subpoena may not, over proper objection, compel production of other than a corporate diary as to which there is no privilege.

While one notes that realistically the witness *is* in fact in the best position to demonstrate to the court the propriety of his

nonproduction—a fact that is equally true when a witness refuses to testify—nevertheless the privilege against self-incrimination is of such paramount importance as to provide protection against even such risk of incrimination as might flow from merely justifying the assertion of the privilege by the surrender of the diary for inspection.

The authorities support this conclusion. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *United States v. Cogan*, 257 F.Supp. 170 (S.D.N.Y., 1966).

Accordingly the motion by the government to compel the production of diaries sought by the subpoena before me is denied upon the present record, since, in the face of the assertion of the privilege against self-incrimination, the government has made no showing whatever that the witness is in possession of any diary which the subpoena could legitimately demand.

So ordered.

---

[**] The Court senses that diaries do exist but that the witness regards them as personal and therefore privileged upon a proper claim of self-incrimination. *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), *Fischer v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).